```
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS


KEITH V. MENEFEE,
& DUSTIN S. BLEVINS,

               Plaintiffs,

          v.                       CASE NO. 08-3314-SAC

ROGER WERHOLTZ,
et al.,

               Defendants.
```

### MEMORANDUM AND ORDER

This civil rights complaint, 42 U.S.C. § 1983, was filed by two inmates confined at the Ellsworth Correctional Facility, Ellsworth, Kansas (ECF). Defendants are officials of the Kansas Department of Corrections (KDOC) including Roger Werholtz, Kansas Secretary of Corrections, and Elizabeth Rice, Interstate Compact Coordinator; as well as employees at the ECF including Johnnie Goddard, Warden; Marty Sauers, Classification Administrator; Sharon Cox, Unit Team Manager; and Mark Radenburg, Unit Team Counselor. As the jurisdictional basis for this action, plaintiffs cite 28 U.S.C. § 1343, as well as state statutes of Kansas, Oklahoma, and Idaho. Plaintiffs generally claim that defendants are violating their rights allegedly "guaranteed within the Interstate Compact Agreement Contract" (hereinafter ICA).

### RELIEF REQUESTED

Plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages. They ask the court to declare that their rights under the ICA have been violated and compel

defendants to reevaluate their security classifications; give them "proper medical treatment immediately"; "abandon group punishment procedures and policies"; "allow for proper rehabilitation, benefits, and reintegration process"; prohibit retaliation against plaintiffs for filing this action; and enjoin their transfer without their consent.

**IMPROPER JOINDER OF PARTIES AND CLAIMS**

At the outset, the court finds that the claims of these two inmates are not properly joined in this single civil rights action. Plaintiff Menefee is an inmate from Idaho and complains mainly of his current security classification. Plaintiff Blevins is an inmate from Oklahoma and complains mainly of the computation of his release date. These claims are unrelated, would not require the same proof, and are improperly joined in this action. For these reasons, the court herein orders that Mr. Blevins and his claims be severed from this action.

The court also directs the clerk to copy the pleadings that were signed by Mr. Blevins and their attachments, and open a new case with him as the only plaintiff. The allegations in the complaint, motions and attachments that relate only to Mr. Menefee will not be considered in Mr. Blevins' separate action. Likewise, the allegations in the complaint, motions and attachments that relate only to Mr. Blevins will not be considered in the instant action, in which the only plaintiff will be Mr. Menefee.

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

Both plaintiffs have filed motions to proceed in forma pauperis

(Docs. 2 and 3), and have attached their Inmate Account Statements in support as statutorily mandated.  Section 1915(b)(1) of 28 U.S.C., requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.  Having examined the records of plaintiff Menefee's account (Doc. 2), the court finds the average monthly deposit to plaintiff's account is $54.35, and the average monthly balance is $9.32.  The court therefore assesses an initial partial filing fee of $10.50, twenty percent of the average monthly deposit, rounded to the lower half dollar[1].  Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court[2].  His failure to submit the initial fee in the time allotted may result in dismissal of this action without further notice.

**SCREENING**

The court proceeds to consider only Mr. Menefee's claims herein.  Because Mr. Menefee is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any

---

[1] Pursuant to 28 U.S.C. §1915(b)(1), plaintiff will remain obligated to pay the full $350.00 district court filing fee in this civil action.  Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2).

[2] The records of Mr. Blevins' inmate account indicate he too shall be assessed an initial partial filing fee.  Once the clerk opens a separate action for Mr. Blevins, the court will calculate the partial fee due and issue an Order therein requiring him to submit that fee before his separate action may proceed further.

portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

**FAILURE TO STATE FACTS IN COMPLAINT**

Plaintiff was instructed on his form complaint to provide a statement of his claims and to state what each defendant did that violated his right(s).  Instead, Mr. Menefee merely listed all defendants and followed that with a list of eight one-sentence "violations," which are presumably his claims[3].  All these "claims" are completely conclusory.  None contains a description of an unconstitutional act taken by a certain defendant against plaintiff on a certain date in a certain location.  Plaintiffs simply add that all the violations "took place from approx. April 2005 to present date," and that all defendants "contributed."

A "pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519 1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10 Cir. 1991).  However, the court cannot assume the role of advocate for the pro se litigant, and a broad reading of the complaint does not relieve the plaintiff of the

---

[3] The eight "claims" listed by plaintiff are (1) false custody classification assessment; (2) failure to correct classification assessment; (3) denial of access to courts; (4) discrimination against ICA inmates; (5) breach of contract in denial of rights and guarantees under ICA; (6) conditions of confinement regarding "mixed custody housing, food, clothing, medical, safety and treatment"; (7) failure to provide adequate rehabilitation and programs for reintegration into society as guaranteed by ICA contract, and (8) retaliation for filing grievances regarding defendants' failure to comply with ICA contract.

4

burden of alleging sufficient facts to state a claim on which relief can be based. Id. (Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based).

The court concludes that plaintiff fails to state a claim in his complaint because, as already noted, he does not support each claim with at least a brief description of a factual scenario including specific dates and locations during which he believes his constitutional rights were violated. Nor does he name an individual defendant or defendants as directly involved in each scenario and describe the acts or inactions of that person which allegedly violated his constitutional rights[4].

**FAILURE TO STATE A FEDERAL CONSTITUTIONAL CLAIM**

Not only does plaintiff Menefee state no facts in his complaint in support of his claims, the claims he raises do not amount to federal constitutional violations. In response to questions regarding administrative remedies, plaintiff has attached several exhibits of inmate grievances and the administrative responses. In an effort to discern what facts plaintiff might have to support his claims, the court has examined his exhibits and the claims and facts presented in his administrative grievances. Exhibits attached to the complaint may be considered by the court as part of the

---

[4] Personal participation of the particular defendant is an essential element of a claim under Section 1983. Bennett v. Passic, 545 F.2d 1260, 1262, 63 (10th Cir. 1976)(It is an essential element of a civil rights claim that the particular defendant be personally involved in the alleged denial of the constitutional right.); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). A prison official will not be held liable in a civil rights action unless he directly and personally participated in conduct which deprived the plaintiff of rights secured him by the Federal Constitution.

5

complaint[5].

Plaintiff's exhibits reveal that he is serving a five to fifteen year sentence imposed in the State of Idaho, will "see the parole board in March 2009," and has a release date of October 12, 2009. In his exhibited grievances, Mr. Menefee repeatedly sought minimum custody, and claimed breach of the "ICA contract" and denial of his "constitutional rights as guaranteed by the ICA."

"To state a valid cause of action under § 1983, a plaintiff must allege the deprivation by defendant of a right, privilege, or immunity secured by the Constitution and laws of the United States while the defendant was acting under color of state law." Doe v. Bagan, 41 F.3d 571, 573-74 (10th Cir. 1994). Having considered plaintiff's complaint and attachments, the court finds that plaintiff fails to allege facts sufficient to support a claim of federal constitutional violation. The court discusses each of plaintiff's alleged violations.

**1. ICC and "ICA contract" Claims.**

Plaintiff claims (1) false classification assessment, (2) failure to correct classification assessment, and (5) denial of rights guaranteed by the ICA, which he asserts is a breach of

---

[5] Since plaintiff is required by federal statute to have exhausted administrative remedies on his claims before filing a federal lawsuit, see 42 U.S.C. § 1997e, the court might reasonably assume that the claims he intended to raise in his complaint are reflected in the administrative grievances he exhibits. However, the proper method for plaintiff was to describe in the body of the complaint each factual scenario that he believes supports his asserted legal claims. If plaintiff disagrees with the court's construction of his claims, he may file an Amended Complaint on forms obtained from the clerk in which he plainly sets forth all his properly joined legal grounds together with the factual events that he believes support each of those grounds.

6

contract[6].  He exhibits a letter he sent to defendant Warden Goddard "re: Interstate Compact Agreement Contract Violations."  Complaint (Doc. 1), Exhib. A-3.  Therein, Menefee claimed he had earned and had a right to minimum custody status, had always been a well-behaved and productive inmate, and sought "a minimum wage job to have funds for (his) release."  He asserted rights under K.S.A. § 76-3002 and Idaho Code § 20-701.  Another notable exhibit is Menefee's "response" dated October 9, 2008, to defendant Unit Team Radenberg's written response of the same date.  Id., Exhib. A-7.  Therein, Menefee argued that under the "I.C.A. Contract" he had the "legal right" to be housed in a facility like one he would be in if he were in the sending state.  He also stated he had or would have a better custody classification in the sending state.

These claims are asserted as violations of the Interstate Corrections Compact (ICC)(K.S.A. § 76-3002, et seq.).  However, plaintiff does not cite any specific language from those statutory provisions, or from any contract[7] underlying his ICC transfer, and then allege facts showing a violation of that language by the named defendants.  Instead, he simply attached a copy of the ICC to his complaint.

Even if plaintiff pinpointed specific statutory or contract language and alleged facts to show its violation, he would not state a federal constitutional claim under § 1983.  At most, he might state a violation of state, not federal, law; or a breach of

---

[6] The court finds that plaintiff's bald statement of discrimination against all Interstate Compact inmates, violation (4), is not supported by any facts, and utterly fails to support a claim under § 1983.

[7] Plaintiff frequently refers to "the contract" and the "Interstate Compact Agreement" rather than the ICC.  However, he also fails to cite any language from a contract that exists apart from the ICC.

7

contract claim. "[A]lleged violations of the ICC do not constitute violations of federal law and therefore are not actionable under § 1983." Halpin v. Simmons, 33 Fed.Appx. 961, 964 (10th Cir. 2002)[8]; see Daye v. State, 171 Vt. 475, 482, FN 2, 769 A.2d 630 (Vt. 2000)(and cases cited therein). The ICC's "procedures are a purely local concern and there is no federal interest absent some constitutional violation in the treatment of these prisoners." Garcia v. Lemaster, 439 F.3d 1215, 1219 FN 7 (10th Cir. 2006)(citing Ghana v. Pearce, 159 F.3d 1206, 1208 (9th Cir. 1998); accord Stewart v. McManus, 924 F.2d 138, 142 (8th Cir. 1991)). Breach of contract claims[9] are also purely matters of state law, and are not grounds for relief under Section 1983.

Moreover, contrary to plaintiff's conclusory assertions, prison officials in the receiving state are not mandated by the ICC to provide an inmate transferred thereunder with custody classification and attendant privileges identical to those he may have enjoyed in the sending state. See Jaben v. Moore, 788 F.Supp. 500, 504 (D.Kan. 1992); Garcia, 439 F.3d at 1220 (The ICC does not command (the receiving state) to administer the classification and (program) rules of the various states from which its prisoners have been transferred.). The claim that the ICC and the contract between two states to implement the ICC require the receiving state to apply classification and other policies of the sending state to the transferred inmates has been soundly rejected. see e.g., Garcia,

---

[8] A copy of this unpublished opinion is attached to comply with rules of the Tenth Circuit Court of Appeals.

[9] It has been held that "the Eleventh Amendment provides absolute immunity in federal court to state officials for suits alleging breach of contract under state law." Garcia, 439 F.3d at 1219, FN 7 (citing see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984)).

8

439 F.3d at 1220; see also Stewart, 924 F.2d at 141; Glick v. Holden, 889 P.2d 1389, 1393 (Utah App. 1995)(denying prisoner's claim that he was entitled to benefit of policies and procedures of sending state); Cranford v. Iowa, 471 N.W.2d 904 (Iowa App. 1991). It is only common sense that the authorities having daily physical custody of an ICC inmate must determine the inmate's appropriate security classification and concomitant level of privileges, programs, and conditions of confinement. Jaben, 788 F.Supp. at 504. ICC inmates are subject to all laws and regulations applicable to inmates in the receiving state, and their entitlement is to be treated equitably with those inmates.

Furthermore, a prison inmate generally has no federal constitutional right to a particular security classification or set of privileges. See Estate of DiMarco v. Wyoming Dept. of Corrections, Div. of Prisons, 473 F.3d 1334, 1339 (10th Cir. 2007); Sandin v. Conner, 515 U.S. 472, 484 (1995); Olim v. Wakinekona, 461 U.S. 238, 249 (1983); Lile v. Simmons, 143 F.Supp.2d 1267, 1274 (D.Kan. 2001). As the Supreme Court stated, in a prison setting, we will not find a state-created liberty interest unless the State "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Garcia, 439 F.3d 1215 at 1219 ("deciding ICC does not create liberty interest")(citing Ghana, 159 F.3d at 1209)(quoting Sandin, 515 U.S. at 484). Plaintiff does not refer to any mandatory statutory language in the ICC or other relevant state statute, and thus has not shown that a liberty interest was created in a certain custody classification.

In sum, the court finds plaintiff provides no facts, argument, or authority to convince this court that the statutory and

contractual provisions under which he was transferred mandate that his confinement in the receiving state be under the same custody classification and conditions as in the sending state.

### 2. **Rehabilitation Claims.**

Violation (7) in plaintiff's complaint is: "Failure to provide adequate programming abilities for treatment, rehabilitation and reintegration into society, as guaranteed by the ICA contract." Plaintiff requests that defendants be ordered to "allow for proper rehabilitation, benefits, and reintergration (sic) process." No facts whatsoever are alleged elsewhere in the complaint regarding any specific rehabilitation or reintegration programs, needs of plaintiff, or personal acts of defendants with regard to these matters. In grievances, Menefee claimed he was entitled to minimum custody to participate in additional pre-release programs. However, he also stated that he has "completed all (his) vocational, educational, and program requirements including reintegration." Complaint (Doc. 1) Exhib. A-3. He was informed in response to his grievance that "release preparation does not require minimum custody," and that many Kansas inmates are never reduced below medium custody prior to release. He was also reminded that he is not being released into Kansas.

Plaintiff is not entitled to additional release preparations that he desires. He has not cited language from any statutes or regulations requiring that he be provided a paying job or minimum custody status prior to release. Even if he had provided such cites, violations of state statutes or regulations are not grounds

10

for relief under 42 U.S.C. § 1983.

Plaintiff's general assertion that he is not receiving programs to adequately prepare him for release also fails to state a federal constitutional claim. Jaben, 788 F.Supp. at 505 (While there can be little doubt of the desirability of maintaining a meaningful schedule of programmed activity for inmates, the courts have never found a failure to provide rehabilitative programs to be objectionable on constitutional grounds.)(citing see, e.g., Newman v. Alabama, 559 F.2d 283, 291 (5th Cir. 1977), cert. denied, 438 U.S. 915 (1978); Lovell v. Brennan, 566 F.Supp. 672 (D.Me. 1983), aff'd, 728 F.2d 560 (1st Cir. 1984)).

### 3. **Denial of Access Claims.**

Plaintiff's assertions that he was hindered in pursuing grievances and denied his "right to grieve" are not supported by factual allegations in either the complaint or the attached exhibits. Moreover, these assertions are refuted by his own exhibits. While plaintiff claimed in his grievances that staff members ignored and refused to resolve his grievances, his own exhibits indicate various staff members considered and responded to his grievances and simply denied relief. In any event, a prison inmate has no absolute federal constitutional right to have access to an administrative grievance procedure or to receive answers to his grievances. It follows that a delay in the processing of an administrative grievance resulting from an inter-prison transfer, standing alone, presents no federal constitutional claim.

The federal constitutional right of an inmate to be heard that may be asserted in federal court is that of access to the courts.

11

Plaintiff lists "denying access to courts" as one of his eight "violations." However, this claim is not supported by his conclusory and unclear connected phrases that he is being denied "the ability to use" grievance procedures of the sending state and to appeal misconduct reports and grievances of the receiving state. Moreover, plaintiff does not state facts to support an essential element of a denial of court access claim. To state such a claim, the inmate must allege that defendant's acts or inactions "hindered his efforts to pursue a legal claim," causing him "actual injury." Lewis v. Casey, 518 U.S. 343, 348, 350-51 (1996). He may do so by alleging actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. Id. at 350, 353. Plaintiff has alleged no facts showing actual injury. The court further notes that plaintiff's filing of the instant action plainly demonstrates he has not been denied access to this court.

### 4. **Retaliation Claims**

Plaintiff lists as violation (8) in his complaint "continuous retaliation" by defendants for filing grievances and complaints regarding their failure to comply with the ICA contract. He adds, "this to include multiple transfers to other KDOC facilities and other interferences and harassments from staff." No facts are alleged in the complaint to support this conclusory statement, such as a description of an action taken in retaliation and the underlying circumstances including date and location, along with the names of the persons who took or caused the retaliatory act. The

few statements made in connection with plaintiff's several claims of retaliation are found within his motions and briefs, and do not demonstrate that "but for" a defendant's retaliatory motive the alleged transfers[10] and disciplinary or other administrative actions, would not have occurred. In attachments to plaintiff's motions and briefs, there are also allegations that retaliatory actions are "used" against inmates by "the KDOC." However, these allegations are completely conclusory as well, and do not even suggest that such actions were taken against plaintiff personally.

### 5. Conditions of Confinement Claims.

Plaintiff's violation (6) is: "conditions of confinement, to include (A) mixed custody housing, (B) food, (C) clothing, (D) medical, and (E) safety and treatment." Not one factual allegation is made in the complaint regarding any of these general conditions. Plaintiff clearly cannot obtain injunctive or monetary relief against a named individual based upon such general references.

Perhaps as support for this violation, plaintiff has attached several nearly-identical affidavits to his second Brief in Support of Injunction Relief (Doc. 7). These affidavits contain other inmates' statements regarding some conditions of confinement at ECF. However, plaintiff did not raise the claims made in the statements in his complaint, and has not properly amended his complaint to add these claims. Moreover, the claims in the affidavits do not appear to be sufficiently related to the ICC and other claims that are the

---

[10] For example, plaintiff mentions "multiple transfers," but provides no dates, places, or names of the person or persons who actually ordered his transfer, and does not allege facts showing he would not have been transferred but for their retaliatory motive.

13

main basis for plaintiff's complaint. Nor are the conditions mentioned in the statements alleged to have been caused by any or all of the defendants. These conditions of confinement claims were not added to the original complaint by plaintiff simply attaching statements to a subsequent brief that is not a motion to amend[11].

In order to add claims that were not raised in the original complaint, a plaintiff must file an Amended Complaint[12]. See Fed.R.Civ.P. Rule 15. An Amended Complaint completely supercedes the original complaint, and therefore must contain all claims the plaintiff intends to pursue in the action including those raised in the original complaint. Any claims not included in the Amended Complaint shall not be considered.

Amendments to a complaint must comply with the Federal Rules of Civil Procedure that govern joinder of claims and parties[13]. Fed.R.Civ.P. Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." However, Rule 18(a) must be read together with the other rule on joinder. Fed.R.Civ.P. Rule 20(a)(2) governs permissive

---

[11] The same is true for any other "claims" raised in plaintiff's filings other than the original complaint, that have not been added by proper amendment.

[12] Under Fed.R.Civ.P Rule 15(a), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."

[13] Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). It also prevents prisoners from "dodging" the fee obligations [ see 28 U.S.C. § 1915(b)(1) and (2)] and the three strikes provisions [see 28 U.S.C. § 1915(g)] of the Prison Litigation Reform Act. Id. (FRCP Rule 18(a) ensures "that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Id. Thus, while joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." Zhu v. Countrywide Realty Co., Inc., 160 F.Supp.2d 1210, 1225 (D.Kan. 2001)(citation omitted). Under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." George, 507 F.3d at 607.

The court further finds that even if the allegations regarding conditions made in the affidavits attached to plaintiff's brief were considered joined, no claim of unconstitutional conditions is stated. The allegations in the affidavits are completely conclusory. No actual incidents involving plaintiff and food service, discipline, or searches are described; and no defendant is alleged to have caused personal injury to plaintiff while personally involved in food service, discipline, or a particular search incident.

### 6. Other Claims Not Raised in the Complaint

In a grievance attached to plaintiff's second Brief, he complained about incidents of alleged verbal harassment by his supervisor in the "furniture/lamination department" at HCF. Brief (Doc. 7), Exhib. M. These incidents do not provide any support for

plaintiff's claims in the complaint. Nor are they sufficiently related to the claims in the complaint so as to be properly joined. Moreover, none of the named defendants is alleged to have personally participated in any incidents at HCF[14].

Plaintiff improperly makes other conclusory claims within motions and his brief, rather than in his complaint where all his claims must be raised. For example, he claims in his motion for counsel that defendants interfere with his receiving and mailing legal documents. These claims are also conclusory, are not sufficiently related to the claims in the complaint to be joined in this action, and no named defendant is alleged to have participated in these actions.

### 7. Immediate Medical Treatment Request.

In the complaint, plaintiff makes a bald request for the court to order defendants to "give plaintiffs proper medical treatment immediately." No facts whatsoever are alleged in the complaint or exhibits to support this conclusory request. Obviously, such a generic request, without more, provides no basis for this court to award money damages or other relief against an individual State official. An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106

---

[14] In his grievance, plaintiff sought "personnel action" against several HCF prison officials and back pay. He would have to file a separate complaint naming appropriate defendants at the HCF in order to obtain any relief based upon these allegations. However, he is not entitled to relief in federal court on a claim of verbal harassment, because it does not rise to the level of a federal constitutional violation.

(1976). The deliberate indifference standard includes both an objective and subjective component. To establish the objective component, the inmate must show the presence of a sufficiently "serious medical need," that is, "a serious illness or injury." Id. at 104, 105; Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005)(quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)(quotation omitted)). A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980); Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999); Martinez, 430 F.3d at 1304 (citing Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." Id. at 834; Martinez, 430 F.3d at 1304 (quotation omitted). Plaintiff has alleged no facts showing either that he has had a serious medical need or that any defendant was aware of and disregarded his need for medical treatment.

**8. Other Requests for Injunctive Relief.**

Plaintiff asks this court to prohibit his transfer to any other facility during this action. However, no factual basis or legal authority for such an order is apparent. Under the ICC and relevant case law, decisions regarding the transfer and location of a particular inmate are within the sole discretion of state prison officials, and this court is without authority to interfere with such decisions.

Plaintiff asks this court to order defendants "to abandon group punishment procedures and policies." However, no such procedures or policies are described in the complaint, and no instance is described of their being used by defendants against plaintiff.

**MOTION FOR APPOINTMENT OF COUNSEL**

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 4). There is no right to appointment of counsel in a civil rights action. Instead, the matter is within the court's discretion. The court finds this motion should be denied at this time, primarily because plaintiff has stated no federal constitutional claim[15].

**MOTION FOR SERVICE OF SUMMONS**

Plaintiff has submitted a "Motion for Praecipe," which was filed as a Motion for Service of Summons (Doc. 5). This motion is denied at this time. If this action survives screening, this court will order service of summons.

**BRIEFS IN SUPPORT OF INJUNCTIVE RELIEF**

Plaintiff has filed two documents entitled "Brief in Support of Injunction Relief" (Docs. 6 & 7). The first Brief (Doc. 6) contains nothing but more conclusory statements. Plaintiff alleges he has evidence of "acts of retaliation," but does not describe any evidence. He makes bald references to KDOC's "blatant violations of

---

[15] In this motion, plaintiff refers to this suit as a class action; however, he has not filed a motion for class certification. The motion for appointment of counsel does not contain any information which would allow it to be construed as a motion for class certification. This case was not filed as a class action, and no motion for class certification is before the court.

18

the ICA contract," and "financial difficulties," and treatment that is not legal or humane. These conclusions and bald references are not statements of fact and provide no support for any of plaintiff's claimed "violations."

In the second Brief (Doc. 7), Mr. Blevins raises claims against persons at Norton Correctional Facility and Lansing Correctional Facility who are not defendants herein, and that are unrelated to claims upon which the instant complaint is based. The contents of this "Brief" and its attachments that concern only Mr. Blevins, provide no support for the claims in Mr. Menefee's complaint[16].

**SUMMARY**

The court has concluded that the plaintiffs and their claims are improperly joined in this action, and that Blevins' claims shall be severed from this action and filed as a separate, new action. Plaintiff Menefee is required to submit an initial partial filing fee of $10.50 in this case. Plaintiff Menefee is also required to show cause why this action should not be dismissed for the reasons stated herein including his failure to allege facts in support of a claim of federal constitutional violation.

**IT IS THEREFORE ORDERED** that the clerk of the court shall copy all pleadings in this file that have been signed by plaintiff Blevins and open a new, separate case using those documents with Blevins as the only plaintiff.

---

[16] The other attachments to this brief, affidavits generally complaining about some conditions at the ECF and grievances concerning plaintiff's conflict with his work supervisor at HCF, were already discussed herein and found not to provide factual support for plaintiff Menefee's claims.

**IT IS FURTHER ORDERED** that plaintiff Blevins is hereby severed as a party from this action, leaving plaintiff Menefee as the only plaintiff herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Appointment of Counsel (Doc. 4) and Motion for Service of Summons (Doc. 5) are denied, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff Menefee is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 10.50.  Any objection to this order must be filed on or before the date payment is due.  The failure to pay the fees as required herein may result in dismissal of this action without prejudice and without further notice.

**IT IS FURTHER ORDERED** that, within the same thirty-day period, plaintiff Menefee is required to show cause why this action should not be dismissed for the reasons stated herein including failure to state facts that support a claim of federal constitutional violation.

**IT IS SO ORDERED.**

Dated this 9th day of February, 2009, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge